**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Brian Bielozer, et al.**        ) | **CASE NO. 1:14 CV 1160** |
|                                             ) | |
|                  **Plaintiff,**         ) | **JUDGE PATRICIA A. GAUGHAN** |
|                                             ) | |
|               **vs.**                   ) | |
|                                             ) | |
| **City of North Olmsted, et al.,**  ) | **Memorandum of Opinion and Order** |
|                                             ) | |
|                **Defendant.**      ) | |

### Introduction

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 68).  This case arises from the termination of plaintiff Brian Bielozer's employment.  For the following reasons, the motion is GRANTED.

### Facts

Plaintiffs Brian Bielozer (Bielozer) and Lisa Bielozer filed a First Amended Complaint in this matter naming as defendants the City of North Olmsted and the following employees:  Jamie P. Gallagher (Chief of Police), Charles Fioritto (Police Detective), Ronald Cox (Police Captain), Scott Thomas (Director of Public Safety and Service), Victor Branscum (Police Detective),

1

Cheryl Farver (Human Resources Director), and Lisa Kidd (Employment Specialist).  All employees are sued in their individual and official capacities.

Bielozer was employed as a police officer for the City of North Olmsted from 1998 until his termination on November 27, 2013. The termination documents specifically referenced three North Olmsted Police Department internal investigations.  The first involved an incident at the Sly Fox Tavern.  In disobeyance of previous orders, Bielozer entered the bar by himself and without notifying police dispatch or his supervisors.  While there, Bielozer escorted an intoxicated patron outside.  The patron later reported that he sustained injuries in the struggle with Bielozer.  Bielozer did not inform dispatch or his supervisors about the incident or the injury, and failed to tell his supervisor the complete truth about the incident when later questioned. The second involved Bielozer improperly allowing fellow officer Jack Justice to use Bielozer's LEADS (Law Enforcement Automated Data System) password to access license plate and driver information.  It was noted that Bielozer had also been disciplined in 2008 for a LEADS violation.  The third  involved the revocation of Bielozer's LEADS access by the LEADS security controlling board due to previous violations.  It was noted that as a result of the revocation, Bielozer was no longer able to perform the most basic essential job functions of a law enforcement officer in the State of Ohio or the City of North Olmsted.  In addition to these three bases, it was noted that since 2008, Bielozer had been suspended for a total of 120 days.  He had also received written reprimands and counseling, and been found in violation of other internal codes.  A summary of his disciplinary history was provided.

Plaintiffs filed this lawsuit in the Cuyahoga County Court of Common Pleas. The matter was removed to this Court based on the federal claims asserted under 42 U.S.C. § 1983 and the

Family and Medical Leave Act (FMLA).  The First Amended Complaint sets forth 15 claims. Count One asserts trespass.  Count Two asserts invasion of privacy.  Count Three asserts a violation of 42 U.S.C. § 1983.  Count Four asserts defamation.  Count Five asserts invasion of privacy-false light. Count Six asserts intentional infliction of emotional distress.  Count Seven asserts breach of contract.  Count Eight asserts promissory estoppel.  Count Nine asserts fraud. Count Ten asserts FMLA retaliation. Count Eleven asserts FMLA interference. Count Twelve asserts disability discrimination under the Ohio statute.  Count Thirteen asserts retaliation under the Ohio statute.  Count Fourteen asserts loss of consortium.  Count Fifteen asserts aiding and abetting civil conspiracy.

By prior Order, this Court dismissed Counts Seven, Eight, and Nine; Count Four as to Kidd, Farver, and Thomas; and Count Eleven as to Thomas and Kidd.  Facts relevant to the various claims will be discussed below.

This matter is now before the Court upon defendants' Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

3

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**Federal Claims**

As this case was removed on the basis of federal question jurisdiction, the Court will initially address the three federal claims.

**1) Section 1983**

Count Three asserts that the City of North Olmsted and defendant Gallagher violated plaintiffs' Fourth and Fourteenth Amendment rights. Plaintiffs, however, abandon their Fourteenth Amendment procedural due process claim.

Section 1983 provides a cause of action to those deprived of a constitutional right by law enforcement officers acting under the color of state law. *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir.2000). Defendant Gallagher raises the defense of qualified immunity. "Under that doctrine, government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010) (citing *Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir.2009)). Thus, in determining the applicability of qualified immunity, a court first asks whether the officer's conduct violated a constitutional right. If no constitutional violation is found, "the inquiry stops, the § 1983 claim fails as a matter of law, and the officers do not need qualified immunity." *Williams v. Sandel*, 2011 WL 2790474 (6th Cir. July 13, 2011) (citations omitted). If a potential constitutional violation is found, the court asks "whether the right was clearly established in light of the specific circumstances of the case." *Id.*

The Fourth Amendment "protects two types of expectations, one involving searches, the other seizures." *Hafner v. Animal Charity of Ohio*, 2013 WL 1453377 (N.D.Ohio April 9, 2013) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)) "According to *Jacobsen,* a search occurs when an expectation of privacy that society is prepared to consider is infringed, whereas a seizure of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " *Id.*

5

Accepting plaintiffs' version of the facts, the following occurred and forms the basis of their § 1983 claim.  Bielozer was on medical leave of absence from his employment on April 27, 2013 due to injuries he had sustained in a traffic accident while on duty.  Defendant Gallagher, acting on confidential tips and information that Bielozer had received a load of mulch at his home, proceeded to plaintiffs' residence to investigate whether Bielozer was potentially abusing his medical leave. A North Olmsted police policy permits a supervisor or superior officer to visit an employee on medical leave and report on his condition. The plaintiffs' home is located on a quiet cul-de-sac.  Their backyard is very secluded given that it is surrounded by thick, fully grown trees and shrubbery.  It is bordered by a heavily wooded area to the back and cannot be viewed from the sidewalk.  A walkway wraps along a portion of the back of the house, runs along the length of the garage, and connects to the side of an extended driveway in front of the garage door. Gallagher surreptitiously took photographs of Lisa Bielozer and Bielozer's brother, Keith, who were spreading topsoil in the Bielozer's backyard.  At that point, Gallagher believed that the man was Bielozer. But, Bielozer was not at home at the time. The photographs were taken from the neighbor's front yard.  Gallagher did not take any photographs while in the plaintiffs' yard. After he took the photographs while standing in the neighbor's yard, Gallagher walked up the plaintiffs' driveway and proceeded into their backyard. Gallagher called out "Brian" while he was standing on the walkway behind the plaintiffs' home. This called Lisa's attention to Gallagher and they engaged in a brief conversation as to Bielozer's whereabouts when Gallagher realized that Keith was not Bielozer. Lisa Bielozer and Keith then followed Gallagher from the backyard to the front yard.  Gallagher walked to his car which was parked on the street.  At that point, Keith noticed Gallagher's camera and two neighbors then informed Lisa

6

Bielozer that Gallager had taken the photographs.

For the following reasons, the Court finds that no Fourth Amendment violation occurred which ends the § 1983 analysis.

Plaintiffs rely on *Florida v. Jardines,* 133 S.Ct. 1409 (2013), where the Supreme Court recognized that the front porch of defendant's home was part of the protected curtilage of the home and, therefore, a warrantless use of a drug-sniffing dog on the front porch constituted a violation of the Fourth Amendment.  The gathering of information, i.e., the positive alert by the dog for narcotics, was not permitted and required that the subsequent evidence obtained with a warrant be suppressed.

Here, at most, Gallagher "gathered information" for his investigation of Bielozer's sick leave by taking photographs from a neighbor's yard. He was not in the protected curtilage of plaintiffs' home when he took the photographs. Plaintiffs assert that Gallagher entered into their secluded backyard without being invited or first notifying them, and that he gathered information in connection with his investigation. *Jardines,* however, recognizes that a police officer may permissibly approach a home, knock on the front door, and wait briefly for an invitation to be received.  This is "no more than any private citizen might do." Gallagher testified that he yelled out for Bielozer while he was in plaintiffs' driveway.  Plaintiffs assert that Lisa Bielozer heard Gallager call out "Brian" only after he had entered the backyard, at which point she engaged in a brief conversation with him revealing that Keith was not Bielozer. Taking plaintiffs' version as true, Gallagher announced his presence even if he had already entered the backyard.  Lisa Bielozer then engaged in a brief conversation with him prior to Gallagher departing on his own volition. Finally, the North Olmsted police policy states: "When an officer or member of the

7

Department reports himself sick or injured, a supervisor or superior officer may have him visited by a supervisor or superior officer and a written report of his condition and the circumstances of his illness or injury may be submitted." On this basis, Gallagher was authorized to enter Bielozer's property. Plaintiffs contend that the policy does not give a supervisor permission to enter into a backyard of an injured officer's home and peer through his windows using high powered binoculars. But, this is not what occurred here. Gallagher announced his presence as he entered the backyard.

Gallagher is entitled to summary judgment as there is no Fourth Amendment violation. Having found no constitutional violation, North Olmsted is likewise entitled to summary judgment on this claim. *Cleary v. County of Macomb*, 409 Fed.Appx. 890 (6th Cir. 2011) ("Where, as here, there is no constitutional violation, there can be no municipal liability.)

**(2) FMLA claims**

**(a) FMLA interference**

To establish a prima facie case of FMLA interference, plaintiffs must show: 1) Bielozer was an eligible employee, 2) the defendant was an employer as defined under the FMLA, 3) Bielozer was entitled to leave under the FMLA, 4) Bielozer gave the employer notice of his intention to take leave, and 5) the employer denied the employee FMLA benefits to which she was entitled. *Donald v. Sybra, Inc.,* 667 F.3d 757 (6th Cir. 2012) (citations omitted).

Bielozer testified at deposition:

Q. I want to talk about your FMLA leave. When were you on FMLA leave?

A. May 15th, I think, through August 15th, 2013.

Q. And you received your FMLA leave that you requested?

8

>A. Yes.
>
>\*\*\*
>
>Q. Were you ever denied FMLA leave?
>
>A. No. But after filing for FMLA leave they sent a letter to my house saying I'm part of investigations and I needed to come in while I'm on leave.
>
>Q. Is that the basis of your claim for interfering with your FMLA leave?
>
>A. I believe so.
>
>Q. Anything else we haven't talked about with regard to the basis for your claim for interference with FMLA?
>
>A. Off the top of my head, no.

(pltf. depo. 319-320).  Bielozer testified that by delivering the letter, the City knew it would be adding additional stress and pressure on him while he was exercising his FMLA leave. (*Id.* 321-322).  However, it is undisputed that defendants did not deny Bielozer the FMLA benefits to which he was entitled. In fact, Bielozer testified that he received the leave that he requested. Thus, there was no FMLA interference.

### (b) FMLA retaliation

A plaintiff may establish a prima facie case of FMLA retaliation "by showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Murphy v. Ohio State University*, 549 Fed.Appx. 315 (6th Cir. 2013) (citations omitted) "If the plaintiff carries her burden of proof, the burden shifts to the employer to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. If the employer

succeeds, the burden shifts back to the plaintiff to show that the employer's proffered reason is a pretext for unlawful discrimination." *Id*. At the pretext stage, the Court considers whether the plaintiff "has adduced evidence which would enable a factfinder to conclude that the defendant's stated reason for terminating her is not the true reason and is simply a pretext for unlawful retaliation." *Travers v. Cellco Partnership,* 579 Fed. Appx.409 (6th Cir. 2014) (addressing an FMLA retaliation claim).  "The plaintiff must always produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him." *Id.*  A plaintiff can show pretext by showing that the asserted reason for the action had no basis in fact, did not actually motivate defendant's action, or was insufficient to motivate the action. *Id.*

In addition to his testimony set forth above acknowledging that he received the FMLA leave he requested, Bielozer testified:

> Q. Do you have any facts you were terminated because you took FMLA leave that we haven't already talked about?
>
> A. I don't believe so.

(Bielozer depo. 322).  Even assuming Bielozer could establish a prima facie of FMLA retaliation, he cannot demonstrate pretext.

As stated above in discussing the termination documents, defendants have set forth legitimate, non-discriminatory reasons for Bielozer's discharge.  In particular, Safety Director Scott Thomas's November 27, 2013 letter ordering the termination of Bielozer's employment, upon the recommendation of Chief Gallagher, cited the Sly Fox incident, the LEADS access revocation, and the Jack Justice incident.  Also noted were "120 days of suspension, written

reprimands, shift counseling, referral to other services, and a major lawsuit filed and settled against you for use of force." (Doc. 68 Ex. 4) Additionally, defendant Thomas submits his affidavit wherein he avers:

> I terminated Brian Bielozer based upon all the investigations and issues cited in the November 27, 2013 termination letter, most notably LEADS revocation of his terminal access, and including the prior discipline of 120 days suspension, shift counseling, lack of truthfulness and my concern that Brian Bielozer's behavior did not change after prior, less severe discipline had been imposed.
>
> The Sly Fox Tavern Incident in particular was grounds to terminate Brian Bielozer based upon Brian Bielozer's actions, violation of police rules and procedures and discipline history.

(Scott Thomas aff.)

The LEADS revocation alone is sufficient to justify Bielozer's termination given his inability to perform his job without the LEADS access. The letter announcing Bielozer's termination stated in part:

> ... you are unable to provide law enforcement services to the North Olmsted Police Department, as there are no positions available without LEADS access. Due to these violations to LEADS access, you cannot perform essential job functions for the State of Ohio and the City of North Olmsted.

(Doc. 68 Ex. 4)

Plaintiffs assert that the LEADS revocation and the Sly Fox incident are pretextual. For the following reasons, the Court does not find that plaintiffs show an issue of fact as to pretext.

Plaintiffs contend that the LEADS revocation had no basis in fact and did not actually motivate the dismissal because the revocation resulted from defamatory statements provided to LEADS by defendants during telephone conversations. These assertions are unpersuasive. It is undisputed that the independent LEADS agency, a section of the Ohio State Highway Patrol, made the decision to revoke Bielozer's LEADS access. (Doc. 80 Ex. 4; Lester Reel depo.)

11

Plaintiffs maintain that defendants Fioritto and Cox provided inaccurate and false information to Kara Joseph, a LEADS representative, during a telephone conversation on October 11, 2013 initiated by Ms. Joseph concerning an administrative review of Bielozer's LEADS activities. However, Ms. Joseph did not make the decision to revoke the access and there is no evidence that she conveyed the statements made in the telephone conversation to the LEADS decision maker. Additionally, Joseph testified that the decision maker only reviewed the written materials, consisting of the four internal investigations, provided by North Olmsted. (Joseph depo. 40-42) Based on these materials, the LEADS administrative officers determined that Bielozer violated LEADS. (Lester Reel depo. 80-83) The LEADS officer testified that Bielozer's access was denied due to a lack of trust. (*Id.* 85-87) In sum, North Olmsted had no control over whether the Ohio State Highway Patrol would determine that Bielozer's LEADS access should be permanently revoked.  In fact, North Olmsted was sanctioned by the LEADS agency for its failure to report LEADS violations occurring within its department regarding Bielozer.  (Doc. 68 Ex. V) As LEADS revocation alone justified Bielozer's termination, and the decision to revoke the access was made by a third party, plaintiff fails to establish pretext and summary judgment is appropriate as to this claim.

Even assuming plaintiffs raised an issue of fact as the LEADS issue, he does not raise an issue of fact as to the remaining bases identified in the termination letter, including the Sly Fox incident. Plaintiffs assert that the fact that Bielozer was not terminated until 8 months after this incident undermines its significance.  The Court disagrees. The Sly Fox incident occurred at the end of March 2013. An internal investigation began immediately.  (Doc. 68 Ex. J) Plaintiff took a medical leave from work beginning on April 14, 2013, due to a motor vehicle accident while

on duty, through May 15, 2013. He was then on FMLA leave from May 15 through August 14, 2013. The investigation continued during his absence. When Bielozer returned to work, an agreement was reached in late August to stay his disciplinary proceedings pending an initial determination on an application he had filed for disability pension. (pltf. depo. Ex. 12) Therefore, plaintiffs assertions regarding the lapse of time are unavailing.

Additionally, plaintiffs seem to challenge the bases for the discipline by arguing that there are no written department rules requiring an officer to report to dispatch when he leaves his car or prohibiting him from entering a bar alone. Plaintiffs also assert that Bielozer's lieutenant did not want the patrol officers "to call out mundane radio traffic," the intoxicated patron did not want to pursue the incident, and Bielozer was forthcoming in recounting the incident to his sergeant. Plaintiffs do not establish an issue of fact. At a minimum, Bielozer acknowledged at deposition that he had been previously instructed by superiors to report to dispatch when he exited his patrol car and when he went into a bar, and not to go into a bar alone. He was also aware that he must inform his superior officer when force was used against an individual and that a report be completed. (pltf. depo. 195-226)

For these reasons, plaintiffs fail to establish pretext and, ultimately, do not point to evidence that FMLA retaliation was the true reason for Bielozer's termination.

Although the Court finds that none of the federal claims survive summary judgment, it may exercise jurisdiction over the remaining state law claims. *See Son v. Baptist Healthcare Affiliates, Inc.*, 2015 WL 1401369 (W.D.Ky. 2015) (internal citations and quotations omitted):

> When all federal claims are dismissed before trial and only state law claims remain, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed. Though remand is often the preferred path, there is no categorical rule that the pretrial dismissal of federal claims

13

bars a court from deciding remaining state claims. Plus, district courts have broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims.

**State Law Claims**

**1) Disability Discrimination and Retaliation**

Bielozer's remaining employment claims asserted in Counts Twelve and Thirteen require him to show that his termination was a pretext for discrimination. *Ames v. Ohio Dept. of Rehab. & Corr.*, 23 N.E.3d 162 (Ohio App. 10th Dist. 2014) (disability discrimination) and Thirteen Wholf v. Tremco, Inc., 26 N.E.3d 902 (Ohio App. 8th Dist. 2015 (retaliation). As discussed above, plaintiffs fail to establish pretext and these claims fail on that basis.

**2) Trespass and Invasion of Privacy**

Count One alleges trespass based on Gallagher's actions in entering plaintiffs' property while Bielozer was on medical leave.  Count Two alleges invasion of privacy based on Gallagher's actions in conducting surveillance of plaintiffs' property and taking pictures.

In Ohio, "the essential elements necessary to state a cause of action in trespass are: 1) an unauthorized intentional act, and 2) entry upon land in the possession of another." *Brown v. Scioto Cty. Bd. of Commissioners,* 622 N.E.2d 1153 (1993). This claim fails for the reasons stated above with regard to the § 1983 claim given that the Court has determined that Gallagher did not commit an unauthorized act.

In Ohio, invasion of privacy includes "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Ghaster v. Rocky River*, 2013 WL 6730925 (Ohio App. 8th Dist. December 19, 2013) (citations omitted). As discussed above, Gallagher's action was not

wrongful.

### 3) Defamation

To survive summary judgment on a claim for defamation, plaintiffs must point to some evidence supporting each element: (1) a false statement of fact made about the plaintiff; (2) the statement was defamatory; (3) the statement was published; (4) the plaintiff suffered injury as a result of the publication; (5) and the defendant acted with the requisite degree of fault in publishing the statement. *Sullins v. Raycom Media, Inc*., 996 N.E.2d 553 (Ohio 8th App. 2013).

This claim fails because plaintiffs have not demonstrated, as discussed above, that Bielozer suffered injury as a result of the statements (or omissions) made to Ms. Joseph as she was not the LEADS decision maker and there is no evidence she related the statements to the decision makers.  Rather, the evidence shows that Bielozer's LEADS access was revoked based on written materials provided to the LEADS agency.  Even assuming Ms. Joseph relayed the oral statements to the decision makers, the statements of defendants Fioritto and Cox are protected by a qualified privilege which exists when "the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it."  *Knox v. Neaton Auto Prods. Mfg.,* 375 F.3d 451 (6th Cir. 2004) (citing *Hahn v Kotten,* 43 Ohio St.2d 237 (1975)).  A publication is privileged when it is

> fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.... The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.

*A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 651 N.E.2d 1283, 1290 (1995) (citations omitted).

As the North Olmsted police LEADS Terminal Agency Coordinators, the statements of Fioritto and Cox to Ms. Joseph in response to her inquiries were privileged. Plaintiffs assert that actual malice defeats the privilege given that the statements were made around the time that both Bielozer and Fioritto were seeking the same promotion to sergeant.  However, there is no evidence to support this conjecture.

Summary judgment is warranted on the defamation claim.

### 4) Invasion of privacy- false light

Defendants move for summary judgment on Count Five but plaintiffs fail to counter their arguments.  Summary judgment is appropriate for the reasons stated by defendants.

### 5) Intentional infliction of emotional distress

 It is well-settled under Ohio law that one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, one is liable for such bodily harm. To reach the requisite level of "extreme and outrageous," the conduct must "go beyond all possible bounds of decency, such as to be regarded as atrocious and utterly intolerable in a civilized community." It must be a case in which "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "  *Yeager v. Local Union* 20, 6 Ohio St.3d 369 (1983).

Based on the foregoing discussion regarding plaintiffs' claims, the Court finds no extreme and outrageous conduct by defendants.

16

**6) Derivative claims**

Plaintiffs acknowledge that Counts Fourteen and Fifteen rely on the survival of the other claims.  Having granted summary judgment on all claims, these claims fail as well.

**Conclusion**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.


      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/22/15